(No. 34724.—

KELLOGG SWITCHBOARD AND SUPPLY CORPORATION, Appellee, *vs.* THE DEPARTMENT OF REVENUE, Appellant.

*Opinion filed September 18, 1958.*

LATHAM CASTLE, Attorney General, of Springfield, (WILLIAM C. WINES, RAYMOND S. SARNOW, A. ZOLA GROVES, and THEODORE G. MAHERAS, of counsel,) for appellant.

MICHAEL M. PHILLIPS, of Chicago, for appellee.

Mr. JUSTICE HERSHEY delivered the opinion of the court:

Kellogg Switchboard and Supply Corporation, hereinafter called plaintiff, filed its complaint in the circuit court of Cook County against the Department of Revenue of the State of Illinois, pursuant to the Administrative Review Act, in which it sought the reversal of an administrative decision entered by the Department, denying plaintiff's claim for refund of retailers' occupation taxes paid under mistake of law and fact, in the amount of $90.34. The Department, for answer thereto, filed a certified copy of the entire report of proceedings in the matter before the Department. The circuit court, upon hearing and examination of the transcript of proceedings before the Department, entered an order directing the Department to refund the sum of $90.34 to plaintiff. The revenue being involved the Department appeals directly to this court.

From the report of proceedings before the Department it appears that this claim for retailers' occupation tax arises out of the sale of a certain telephone switchboard, designated as position 7, by plaintiff to the Jerseyville Telephone Company. The plaintiff collected the tax from the Jerseyville Telephone Company and paid the tax to the Department of Revenue. Plaintiff then refunded the amount of the tax to the Jerseyville company and filed its claim for refund with the Department, claiming that the transaction was not a "sale at retail," but amounted to a skilled service

occupation under Rule 3 of the Department of Revenue's Rules and Regulations, promulgated pursuant to the Retailers' Occupation Tax Act. That rule provides:

"1. WHEN LIABLE FOR TAX. Sellers of machinery, tools, dies, jigs, patterns, gauges and the like to users or consumers incur Retailers' Occupation Tax liability except as specified in paragraph 2 hereof. This is true whether the seller installs such tangible personal property for the purchaser or not. (For information concerning the taxability of receipts from installation charges, see paragraph 4, g, of Article 3 of the Rules and Regulations.) Even if the seller would otherwise be exempt from the Retailers' Occupation Tax under paragraph 2 hereof if he were the producer of particular tangible personal property, he may not claim the benefit of such exemption if he buys the specially made tangible personal property from someone else instead of producing it himself. The seller is not exempt under paragraph 2 of this Rule merely because he produces the tangible personal property, nor because he does not carry the tangible personal property in stock and so produces it only upon receipt of an order therefor, nor because he alters a more or less standard type of tangible personal property to meet the particular needs of the purchaser.

"2. WHEN NOT LIABLE FOR TAX. In the case in which the purchaser employs the seller primarily for his engineering or other scientific skill to design, develop, construct and produce a special machine, tool, die, jig, pattern, gauge or other similar item on special order for and to meet the particular needs of the purchaser, and in such a way that the item, when so produced, had use or value (other than salvage value) only to the purchaser and has use or value only for the specific purpose for which such item is produced by the seller for the purchaser, the seller is engaged primarily in a service occupation rather than in the business of selling tangible personal property and does not incur Retailers' Occupation Tax liability. Receipts from repair-

ing tangible personal property belonging to others are not subject to the Retailers' Occupation Tax (see Rule No. 10 of the Rules and Regulations)."

The Department issued a tentative denial of the claim for refund, and the cause was then heard before a hearing officer pursuant to the provisions of the Administrative Review Act. (Ill. Rev. Stat. 1957, chap. 110, pars. 264 *et seq.*) The plaintiff offered five witnesses and placed numerous exhibits in evidence. The Department offered only certain exhibits, consisting of certain letters, claims for credit, notices, portions of taxpayer's catalog and statistical and general telephone data. Thereupon the hearing officer entered his findings and recommendations upon which the Department entered its final determination denying the claim for credit. The hearing officer found that the plaintiff merely assembled a machine consisting of standard parts, that plaintiff did not fall within the classification of a service occupation in the transaction within the meaning of Rule 3, and hence was not engaged in an occupation exempt from application of the Retailers' Occupation Tax Act.

The Department insists that the transaction involved was a "sale at retail" of the Jerseyville switchboard, within the meaning of the Retailers' Occupation Tax Act, and measured the tax. Plaintiff insists that the transaction involved herein required primarily skilled engineers, experience and "know how" in the construction of a specialized machine to provide a position 7 which would fit with and connect into and with the existing equipment at the Jerseyville exchange.

Certain standards have been formulated to determine when a vendor is engaged in the business of selling at retail. If the article sold has no value to the purchaser except as a result of services rendered by the vendor and the transfer of the article to the purchaser is an actual and necessary part of the service rendered, then the vendor is engaged

in the business of rendering service and not in the business of selling at retail. If the article sold is the substance of the transaction and the service rendered is merely incidental to and an inseparable part of the transfer to the purchaser of the article sold, then the vendor is engaged in the business of selling at retail. *Snite* v. *Dept. of Revenue,* 398 Ill. 41.

It appears that the business of plaintiff consists of manufacturing telephones and communications equipment. Testimony reveals that switchboards, such as supplied to Jerseyville are not carried in stock as such by plaintiff. The original six positions in the Jerseyville exchange were built and installed by plaintiff, and the equipment here involved was for the purpose of adding a seventh position to the Jerseyville exchange, to connect into and operate with the existing equipment. It appears that upon receipt of the Jerseyville order, the plaintiff set about fabricating the various "patented" relays and circuits and incorporating them into a switchboard. Many of the relays are not stocked as such due to the lack of volume in their sale. It appears, in general, however, from all of the testimony that the switchboard was constructed of stock parts, patented circuits and relays and jacks, together with other equipment designed, fabricated, or acquired by plaintiff, assembled into one unit and adapted to the system into which it must operate. To be sold to another customer, if found, it would probably have to be modified or readapted, or if unsold it would be disassembled and the various parts placed in stock until needed for the composition of another unit. The Jerseyville switchboard was a "standard" Master Built Switchboard, and the plaintiff advertises the standardization of its switchboard equipment. It is true that 94 per cent of the component parts of this board were fabricated after receipt of the order, but it appears from the evidence that this procedure resulted from lack of volume in sales, and to facilitate the adaption of the com-

ponent parts to an existing system. It does not appear that these components were specifically and individually designed and engineered for Jerseyville alone.

This switchboard is not such an individual and specialized machine that it is of no worth, other than as salvage, to anyone else as in *Ingersoll Milling Machine Co.* v. *Dept. of Revenue,* 405 Ill. 367. It is not of such peculiar and special fabrication as to be of no worth to a separate installation as encountered in *Paris Co.* v. *Lyons,* 8 Ill.2d 590. It appears that only the adaption of the board to the local installation comprises the special service in this transaction, and is incidental to and an inseparable part of the sale of a telephone switchboard, fabricated of standard components held out for sale to all customers. Plaintiff does little more than any manufacturer who assembles low volume production only upon receipt of orders.

The hearing officer and the Department determined that this transaction was a sale at retail, and the price of the unit measured the tax. Under the Administrative Review Act, the findings of the administrative agency on questions of fact are primarily correct, may be reviewed to determine if they are supported by the evidence and may be set aside only if they are against the manifest weight of the evidence. (*Logan* v. *Civil Service Com.* 3 Ill.2d 81.) The reviewing court has a judicial function in such case, comparable to the issue at law as to whether there is competent evidence to support the judgment of the lower court. (*Parker* v. *Dept. of Registration,* 5 Ill.2d 288.) It appears that there is evidence to support the findings of the Department of Revenue. Granting full weight to the argument advanced by the plaintiff and its view of the evidence, still only a debatable point is raised. Certainly the findings of the Department are not contrary to the manifest weight of the evidence, and should not be disturbed. The determination of the Department is proper.

Accordingly, the judgment of the circuit court of Cook County is reversed.

*Judgment reversed.*