(No. 37247

THE DOW CHEMICAL COMPANY, Appellee, *vs.* THE DEPARTMENT OF REVENUE, Appellant.

*Opinion filed November 30, 1962.*

WILLIAM G. CLARK, Attorney General, of Springfield, (WILLIAM C. WINES, RAYMOND S. SARNOW, and A. ZOLA GROVES, Assistant Attorneys General, of counsel,) for appellant.

GIFFIN, WINNING, LINDNER & NEWKIRK, of Springfield, (MONTGOMERY S. WINNING, of counsel,) for appellee.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

The plaintiff, The Dow Chemical Company, is engaged

in the business of furnishing what are called "stimulation treatments" for oil and gas wells, and sometimes for water wells. In the course of these treatments, chemicals are injected into the well, and the operator of the well is billed separately for them. Upon the ground that the chemicals thus used were sold at retail by the plaintiff, the Department of Revenue levied deficiency assessments against it under the Retailers' Occupation Tax Act (Ill. Rev. Stat. 1959, chap. 120, pars. 440-453) in the sum of $66,932.43. The assessments covered the period from July, 1956, to February, 1959. In the plaintiff's administrative review action in the circuit court of Sangamon County, the court entered judgment setting aside the assessments and the Department has appealed directly to this court. The revenue is involved.

Stimulation treatments are designed to increase the production of wells. In preparing to administer such a treatment the plaintiff obtains core samples from the well, as well as oil and water samples, and it collects information from the operator as to the depth of the well and its other characteristics. The samples and information obtained are sent to the plaintiff's laboratories where they are analyzed and thereafter suggestions as to the most effective materials to be used in stimulating production of the well, as well as an estimate of the cost of the treatment, are transmitted to the operator.

A crew of four to six men, one of whom is a service engineer, is customarily sent out by the plaintiff for the treatment of a well. The necessary equipment, in the form of a blender in which the materials to be injected into the well are mixed, and a high pressure pumping unit, by means of which they are pumped into the well, is furnished by the plaintiff. As the materials are pumped into the well a record is kept of the exact well head pressure, and notations are made showing the amount of material being pumped into the well. When the job is finished, a report is prepared which gives a breakdown of the materials used, the number

of men and type of truck involved, the distance from the plaintiff's station to the well, and the time spent at the well. The engineer in charge then itemizes the materials and equipment used and enters these items on an order form which the operator signs. After the order form has been signed, the engineer makes out his report and sends it to the plaintiff's office in Tulsa. That office then issues an invoice to the operator of the well. The invoice and the order form itemize the cost of the treatment by allocating a specific sum for each material used. No separate charge is allocated for service, although an itemized charge is made for the rental of plaintiff's machines. Testimony was introduced by the plaintiff that costs allocated to the material were merely for convenience and were not in fact a charge for materials. The Department has assessed the tax upon the charge allocated to the materials used, other than sand which was excluded on the ground that it became a part of the real estate.

The issue is whether the plaintiff is engaged in the business of rendering a service to the well operators, or in the sale of chemicals at retail. The applicable standards for the determination of this issue were thus stated in *Kellogg Switchboard and Supply Corp.* v. *Department of Revenue,* 14 Ill.2d 434, 437—8: "If the article sold has no value to the purchaser except as a result of services rendered by the vendor and the transfer of the article to the purchaser is an actual and necessary part of the service rendered, then the vendor is engaged in the business of rendering service and not in the business of selling at retail. If the article sold is the substance of the transaction and the service rendered is merely incidental to and an inseparable part of the transfer to the purchaser of the article sold, then the vendor is engaged in the business of selling at retail."

From the record before us it appears that the plaintiff uses its specialized skill, knowledge and experience at every stage of the stimulation treatment process. Detailed in-

formation about each well that is treated is first obtained by the plaintiff and sent to its laboratory for analysis by skilled technicians. The treatment that a particular well requires and the nature and quantity of the materials to be used are determined by plaintiff. The plaintiff's service engineer maps out the location for the equipment and the exact procedure to be followed. At no time are the chemicals placed in the hands of the well operator. From the time plaintiff first contacts an operator regarding a stimulation treatment until the treatment is completed, the plaintiff is in complete control of the materials and equipment to be used and the procedure to be followed. It appears clear from the undisputed testimony that the chemicals sold have no independent value to the well operator except as a result of the service furnished by the plaintiff. It also seems clear that the treatments involve the utilization of special skill, knowledge and experience to accomplish the end result desired by the customer, and that the chemicals utilized are incidental to the rendition of the service. *Wallender-Dedman Co.* v. *Department of Revenue,* 15 Ill.2d 485, 493.

The cases relied upon by the Department are readily distinguishable. In *Kellogg Switchboard and Supply Corp.* v. *Department of Revenue,* 14 Ill.2d 434, the sale of a telephone switchboard was held to measure the tax. That decision was based on our conclusion that "only the adaption of the board to the local installation comprises the special service in this transaction, and [that] is incidental to and an inseparable part of the sale of a telephone switchboard, fabricated of standard components held out for sale to all customers." In the case before us, not only was each treatment adapted to the requirements of a particular well, but plaintiff's special skill and experience were necessary in the treatment itself. And while the customer in the *Kellogg* case was interested only in the acquisition of a telephone switchboard, the customers in this case were not interested

in acquiring chemicals, but in improving the production of their wells.

In *Massell* v. *Daley,* 404 Ill. 479, on which the Department also relies, the taxpayer was engaged in the business of providing entertainment and selling food and beverages at retail. We held that two separable activities were involved, and that the sales of food and beverages measured a tax. In the present case the business of the plaintiff is not so divisible. The use of the chemicals is an incidental part of the service operation.

What is determinative is the actual nature of the transaction. The taxpayer's method of billing is relevant because it affords some indication as to the way the taxpayer regarded the transaction. But it is not conclusive. Neither taxability nor nontaxability can depend, in the last analysis, upon the method of billing employed by the taxpayer.

The judgment of the circuit court of Sangamon County is affirmed.

*Judgment affirmed.*