Filed 8/14/15  TD Auto Finance v. Fitzpatrick CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Butte)

----

| | |
|---|---|
| TD AUTO FINANCE, LLC, | C076685 |
| Plaintiff and Respondent, | (Super. Ct. No. 158459) |
| v. | |
| LISA GISLON FITZPATRICK, | |
| Defendant and Appellant. | |

Defendants and appellants Scott Fitzpatrick and Lisa Gislon Fitzpatrick, husband and wife (together, the Fitzpatricks), appeal in propria persona from a judgment entered in favor of plaintiff and respondent TD Auto Finance, LLC (TDAF), after the trial court granted TDAF's motion for summary adjudication of its causes of action for breach of a sales contract for the purchase of a car and wrongful possession of personal property, and determined that TDAF was entitled to a security interest in the car.[1]  We shall affirm the judgment.

---

[1] When referring to the Fitzpatricks individually, we will use their first names for clarity.

1

**BACKGROUND**

In September 2012, Lisa entered into a retail installment sales contract with Chico Nissan Hyundai (the dealer) for the purchase of a new car. The dealer assigned the retail installment sales contract to TDAF.

The purchase price for the car was $39,667. Lisa made a down payment of $7,232 and financed the rest. Under the contact, Lisa was required to make 72 monthly installment payments in the amount of $450, beginning in October 2012. Alternatively, she could pay the entire amount due.

Under the contract, Lisa gave TDAF a security interest in the car. TDAF was identified as a lien holder in the certificate of title submitted to the Department of Motor Vehicles.

Lisa made the first monthly payment as scheduled. A week later, Lisa sent TDAF an instrument in the amount of $28,332 to pay off the remaining balance on the car loan. The instrument was drawn on an account with JPMorgan Chase Bank (Chase).[2]

Upon receipt of the check, TDAF released its lien on title and notified Lisa that it had done so. TDAF subsequently learned from Chase that the check had been dishonored because it was drawn on a closed account.

TDAF contacted Scott in November 2012 and asked him to either: (1) replace the funds to allow the car to be paid off; (2) allow the lien to be reinstated; or (3) return the car. Scott refused to take any of these steps. Lisa made no further payments on the car.

TDAF filed a verified complaint for possession of personal property, breach of contract, money lent, account stated, conversion, trespass to personal property, and fraud in December 2012. The complaint also seeks a deficiency judgment, declaratory relief, and injunctive relief. Approximately one year later, TDAF filed a motion for summary

---

[2] There appears to have been some dispute in the trial court as to whether the instrument was a check or an electronic funds transfer. We need not resolve this dispute.

2

adjudication of issues, seeking a determination that TDAF was entitled to a money judgment for the balance due on the car, possession of the car, and reinstatement on the certificate of title as lienholder.

TDAF's motion for summary adjudication was heard on March 19, 2014. At the beginning of the hearing, the trial judge (Glusman), who serves as Supervising Judge of the Civil Division of Butte County Superior Court, explained that he had assigned the case to himself because the Fitzpatricks had filed a complaint against the previously assigned judge in federal court. Scott "objected" to the trial judge's remarks, and continued to object after the trial judge instructed him not to. After Scott's second improper objection, the bailiff admonished him, "Sir, listen to the judge."

The trial court granted TDAF's motion for summary adjudication, and TDAF dismissed its remaining claims. The trial court subsequently entered judgment in TDAF's favor.

The Fitzpatricks filed a motion to vacate the judgment for lack of subject matter jurisdiction. The motion was denied. TDAF brought a motion for attorneys' fees and costs, which was granted. The trial court subsequently entered an amended judgment in TDAF's favor. The amended judgment awards damages in the amount of $28,953 on TDAF's cause of action for breach of contract, attorneys' fees in the amount of $20,000, and costs in the amount of $2,707. In addition, the judgment awards TDAF possession of the car and reinstatement on the certificate of title for the car as lienholder.

The Fitzpatricks filed a timely notice of appeal.

### DISCUSSION

The Fitzpatricks contend the judgment is void for lack of subject matter jurisdiction. They offer several variations on this theme, none of which has merit.

" 'The principle of "subject matter jurisdiction" relates to the inherent authority of the court involved to deal with the case or matter before it.' [Citation.]" (*Varian Medical Systems, Inc. v. Delfino* (2005) 35 Cal.4th 180, 196.) In the absence of subject matter

3

jurisdiction, a trial court has no power to hear or determine the case and any judgment or order rendered by the court is void on its face. (*Ibid.*) When the jurisdictional facts are not in dispute, we review subject matter jurisdiction de novo, as a question of law. (*Dial 800 v. Fesbinder* (2004) 118 Cal.App.4th 32, 42; *Robbins v. Foothill Nissan* (1994) 22 Cal.App.4th 1769, 1774.)

A California superior court has original jurisdiction over all causes, except those given by statute to other trial courts. (Cal. Const., art. VI, § 10; see also *Serrano v. Stefan Merli Plastering Co., Inc.* (2008) 162 Cal.App.4th 1014, 1029 ["The California Constitution confers broad subject matter jurisdiction on the superior court"].)[3] As a court of general jurisdiction, the superior court is presumed to have jurisdiction over a cause and lack of jurisdiction must be affirmatively shown. (*Cheney v. Trauzettel* (1937) 9 Cal.2d 158, 160 (*Cheney*).)

The Fitzpatricks do not contend that any statute divests the superior court of jurisdiction to decide the present case. Instead, they argue that the trial court lacked subject matter jurisdiction because TDAF "has never appeared nor given testimony neither in open court nor in deposition."[4]

---

[3] "The subject matter jurisdiction of the superior court is limited in certain circumstances, however, such as in areas of exclusive federal jurisdiction [citation], matters within the exclusive jurisdiction of an administrative agency [citation], and where jurisdiction is vested in a reviewing court as a result of the filing of a notice of appeal [citation]." (*Serrano v. Stefan Merli Plastering Co., Inc., supra,* 162 Cal.App.4th at p. 1029.)

[4] The Fitzpatricks are simply wrong when they suggest that TDAF never "appeared" in the case. An appearance is an act by a party "which in some manner recognizes the authority of the court to proceed." (*Sanchez v. Superior Court* (1988) 203 Cal.App.3d 1391, 1397.) TDAF "appeared" in the case by filing the complaint. (*Stubblefield Constr. Co. v. Superior Court* (2000) 81 Cal.App.4th 762, 768 ["A plaintiff appears in an action when the complaint is filed"].) We therefore understand the Fitzpatricks to argue that the trial court lacked subject matter jurisdiction because no one from TDAF appeared in court to testify as a witness.

Contrary to the Fitzpatricks' contention, subject matter jurisdiction does not depend on whether a party witness appears in court or testifies. The existence of subject matter jurisdiction is generally determined at the time an action is commenced, before any witness appears or gives testimony. (*Gardiner v. Royer* (1914) 167 Cal. 238, 244 ["Jurisdiction of the cause attaches at the time of the commencement of the action"], superseded by statute on other grounds as stated in *Walker v. Superior Court* (1991) 53 Cal.3d 257, 265, fn. 3; see also *In re Jaheim B.* (2008) 169 Cal.App.4th 1343, 1348 ["Subject matter jurisdiction either exists or does not exist at the time the action is commenced and cannot be conferred by stipulation, consent, waiver or estoppel"].) The parties are not required to appear in court as witnesses or give testimony in order to invoke the superior court's subject matter jurisdiction.

The Fitzpatricks purport to find support for their contention that subject matter jurisdiction requires a "competent fact witness" in the confrontation clause of the Sixth Amendment to the United States Constitution (U.S. Const., 6th Amend.), the U.S. Supreme Court's opinion in *Johnson v. Zerbst* (1938) 304 U.S. 458 [82 L.Ed. 1461] (*Zerbst*), and two nonbinding Illinois cases, *Pure Oil Co. v. City of Northlake* (Ill. 1956) 140 N.E.2d 289 (*Pure Oil*) and *Hallberg v. Goldblatt Bros., Inc.* (Ill. 1935) 1 N.E.2d 220 (*Hallberg*). None of these authorities help the Fitzpatricks.

Contrary to the Fitzpatricks' apparent belief, the confrontation clause of the Sixth Amendment does not apply to civil proceedings and does not require an appearance by a "competent fact witness" in civil cases. (*People v. Otto* (2001) 26 Cal.4th 200, 214 ["There is no right to confrontation under the state and federal confrontation clause in civil proceedings"].) It follows that the confrontation clause does not divest the trial court of subject matter jurisdiction to hear the present dispute.

*Zerbst* is equally inapposite. In *Zerbst*, the U.S. Supreme Court addressed whether a conviction could be collaterally attacked through a petition for a writ of habeas corpus when the petitioner, a criminal defendant, had been completely deprived of the assistance

5

of counsel. (*Zerbst, supra*, 304 U.S. at pp. 459-460 [82 L.Ed. at p. 1464-1465].) The court held that the petitioner could file a habeas petition and attack his conviction because it was obtained in violation of the Sixth Amendment. (*Id.* at pp. 467-469.) In so holding, the court noted that, "[s]ince the Sixth Amendment constitutionally entitles one charged with [a] crime to the assistance of counsel, compliance with this constitutional mandate is an essential jurisdictional prerequisite to a federal court's authority to deprive an accused of his life or liberty." (*Id.* at p. 467.) *Zerbst* does not help the Fitzpatricks because, as civil litigants, they do not have a constitutional right to assistance of counsel. (See U.S. Const., 6th Amend. [In all *criminal* prosecutions, the accused shall have the right to effective assistance of counsel]; see also *Austin v. United States* (1993) 509 U.S. 602, 608 [125 L.Ed.2d 488, 496] ["The protections provided by the Sixth Amendment are explicitly confined to 'criminal prosecutions' "]; *Kim v. Orellana* (1983) 145 Cal.App.3d 1024, 1027 ["In a criminal prosecution the defendant has the right to competent representation at trial based on the constitutional right to the assistance of counsel for his defense [citations]. [Citation.] There is no equivalent constitutional right in a civil proceeding"].)

The Fitzpatricks' reliance on *Pure Oil* and *Hallberg* is also misplaced. As TDAF observes, *Pure Oil* does not say anything about jurisdiction or the appearance of witnesses, and *Hallberg* addresses the Illinois Supreme Court's jurisdiction to entertain a writ of error, an issue that has nothing to do with the question before us. We therefore reject the Fitzpatricks' contention that the trial court lacked subject matter jurisdiction because TDAF "has never appeared nor given testimony neither in open court nor in deposition."

Next, the Fitzpatricks argue that the trial court lacked subject matter jurisdiction because "there were not any affidavits included in the original complaint served upon [them] on January 7th, 2013, therefore the complaint was defective." (Footnote omitted.) Specifically, the Fitzpatricks contend Code of Civil Procedure section 446 required

6

verification of TDAF's complaint by means of an "affidavit" in order to invoke the trial court's subject matter jurisdiction.[5]  We disagree.

Section 446 provides in pertinent part, "In all cases of a verification of a pleading, the affidavit of the party shall state that the same is true of his own knowledge, except as to matters which are therein stated on his or her information or belief, and as to those matters that he or she believes it to be true; and where a pleading is verified, it shall be by the affidavit of a party, unless the parties are absent from the county where the attorney has his or her office, or from some cause unable to verify it, or the facts are within the knowledge of his or her attorney or other person verifying the same."  (Code of Civ. Proc., § 446, subd. (a).)  Although section 446 uses the term "affidavit," a certification or declaration under penalty of perjury is equivalent to an "affidavit," (§ 2015.5) and satisfies the statute's requirements.  (*City and County of San Francisco v. Evankovich* (1977) 69 Cal.App.3d 41, 53.)  The present complaint was verified under penalty of perjury by an authorized representative of TDAF, and therefore complies with section 446.  Because we conclude that TDAF's complaint complies with section 446, we need not reach the Fitzpatricks' contention that the absence of an affidavit deprived the trial court of subject matter jurisdiction.  Nevertheless, we note in passing that *Columbus v. Jackson* (Ohio Ct.App. 1952) 114 N.E.2d 60, on which the Fitzpatricks rely, deals with the requirements for filing criminal complaints in the State of Ohio, and is therefore inapposite.

Next, the Fitzpatricks argue that subject matter jurisdiction was "lost when there was unlawful activity by the court."  Specifically, the Fitzpatricks claim that the bailiff "assaulted [them] with a deadly weapon under color of law . . . ."  There is nothing in the record to suggest that the bailiff "assaulted" the Fitzpatricks or otherwise acted

---

[5]  Undesignated statutory references are to the Code of Civil Procedure.

improperly. Moreover, and more to the point, the Fitzpatricks offer no support for their contention that any such alleged misconduct would deprive the trial court of fundamental jurisdiction to hear the case.[6] We therefore reject the Fitzpatricks' contention that subject matter jurisdiction was "lost."

Finally, the Fitzpatricks take TDAF to task for failing to establish subject matter jurisdiction "on the record."[7] Contrary to the Fitzpatricks' contention, TDAF was not required to "prove" the existence of subject matter jurisdiction in the trial court. As we have previously discussed, the superior court is presumed to have subject matter jurisdiction, and a lack of jurisdiction must be affirmatively shown. (*Cheney, supra,* 9 Cal.2d at p. 160; see also *Peterson v. Donelley* (1939) 33 Cal.App.2d 133, 137 [same].) The Fitzpatricks have failed to carry their burden of demonstrating that the trial court lacked subject matter jurisdiction to decide the case. Accordingly, we shall affirm the judgment.

---

[6] The Fitzpatricks quote *Zerbst* for the proposition that, "If the Bill of Rights is not complied with, the court no longer has jurisdiction to proceed . . . ." This language does not appear in *Zerbst*. Instead, *Zerbst* states: "If this requirement [of the right to effective assistance of counsel] of the Sixth Amendment is not complied with, the court no longer has jurisdiction to proceed." (*Zerbst, supra,* 304 U.S. at p. 468 [82 L.Ed. at p. 1468].) The Fitzpatricks' reliance on *Zerbst* is misplaced for the reasons we have already discussed.

[7] The Fitzpatricks find support for their theory that TDAF has the burden of demonstrating the existence of subject matter jurisdiction in *Bindell v. City of Harvey* (Ill. 1991) 571 N.E.2d 1017 and *Loos v. American Energy Savers, Inc.* (Ill. 1988) 522 N.E.2d 841. Once again, the Fitzpatricks' out-of-state authorities are inapposite. *Bindell* deals with the assertion of jurisdiction by an administrative agency, not a court of general jurisdiction. (*Bindell, supra,* 571 N.E.2d at p. 1019 ["there is no presumption in favor of an administrative agency's assertion of jurisdiction [citation] and the burden of proving jurisdiction rests upon the party asserting it"].) *Loos* deals with personal jurisdiction, not subject matter jurisdiction. (*Loos, supra,* 522 N.E.2d at p. 843 ["Where [personal] jurisdiction is contested, the burden of establishing it rests on the plaintiff"].) Neither of these nonbinding authorities does anything for the Fitzpatricks.

## DISPOSITION

The judgment is affirmed.  TDAF shall recover its costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1) & (2).)

                            RENNER                  , J.

We concur:

 BLEASE          , Acting P. J.

 HOCH           , J.